KIERNAN *et al.* v. STAFFORD *et al.*

(*Circuit Court, D. New Jersey.*  September 26, 1890.)

COLLISION—TUG AND STEAM-SHIP.
    A tug, with a bark in tow, and a steam-ship were approaching nearly head on when first discovered. The tug signaled that she proposed to pass on the starboard side. The steam-ship signaled in reply to port helm, and pass each other on the port side. The tug accepted this signal, but the steam-ship, when so near as to render a collision almost inevitable, changed her signals, and the tug, to avoid being run down, turned quickly to the left, and escaped by a distance of about a dozen feet. The bark was unable to get out of the way, and was struck by the steam-ship. At the place where the collision occurred there was no material obstruction to the view. *Held,* that the tug was not in fault.

In Admiralty.   On appeal from district court.   See 38 Fed. Rep. 767.
*De Lagnel Berier* and *Henry G. Ward,* for libelants.
*Owen, Gray & Sturges,* for James E. Stafford.
*Sidney Chubb,* for F. O. Matthiessen & Wiechers Sugar Refining Company, respondents.

BRADLEY, Justice.   After carefully reading the evidence in this case, I am unable to agree with the judge of the district court as to the tug Leonard Richards being in fault in regard to the collision between the steamer Ludwig Holberg and the bark Quickstep.   The only direct evidence in the case as to the position and movements of the three vessels at the time of and preceding the collision was given by McDevitt and Devlin, the master and mate of the tug, by Woods, the pilot in charge of the bark and tug, and by the officers and crew of the Quickstep; and from this evidence, taken together, it seems to me that the Holberg was solely to blame.   Had the people in charge of the Holberg been brought in to testify, the case might have had a different look; but they were

not, and the omission to produce them rather raises a presumption against the respondents. The account given by the captain and mate of the tug is substantially confirmed by the pilot, and the testimony of the officers and crew of the Quickstep does not materially affect it. That account is that the tug, with the Quickstep in tow by a hawser of 80 fathoms in length, about half-past 4 o'clock in the afternoon of the 24th of May, 1887, had just issued from the Swash channel, on their way to New York, and had entered the main channel, and were heading north by east on the course of that channel, when they discovered the Holberg coming down the channel, about half a mile distant, nearly ahead, but slightly on their port bow; she (the Holberg) heading a little more south-easterly than the reverse course of the tug and bark, so as to show her starboard bow and side. Thereupon the tug, as was proper to do, blew two blasts of the whistle to signify that she proposed to pass to the left; that is, on the starboard side of the Holberg. But the latter did not accept this offer, and replied with a single blast, signifying to port helm, and pass each other to the right, or each on the port side of the other. The tug at once accepted this signal, and replied by a single blast to that effect, and immediately ported her helm accordingly, and the Quickstep did the same; but the Holberg, after porting her helm sufficiently to bring her head-on to the tug and bark, steadied her helm so as to run directly towards them. Seeing this, the captain of the tug repeated the single blast to call the attention of the Holberg to the maneuver agreed on. But then the Holberg, when so near as to render a collision almost inevitable, blew two blasts, and the tug, to escape being run down, turned quickly to the left, and just escaped by a distance of only ten or a dozen feet. The bark was absolutely unable to get out of the way. The Holberg kept on her course, running between the tug and the bark, cut the towing hawser in two, and struck the bark on her port quarter, abaft the mizzen-topmast back-stay, cutting into her several feet, which caused her to sink, and produced the loss in controversy.

It is clear from this evidence that the disaster was caused by the Holberg not complying with the signals agreed on, and changing the signals at an inopportune moment, and that no fault can be attached to the tug Undoubtedly, the vessels were far enough apart when first seen by each other to have avoided all danger of collision. The channel was wide enough to have enabled either of them to bear away at a safe distance. The tug, by sheering off greatly out of her course, could have kept away from the Holberg, if the latter contumaciously refused to give way. But the ordinary rules of navigation do not require any such anomalous course. It may be presumed that each vessel will observe the rules laid down for passing each other, and which are abundantly sufficient to obviate collisions, without requiring them to make wide and useless circuits. The after wisdom which points out what might have been done, but which the ordinary rules of human conduct do not expect to be done, is no criterion for judging of culpability.

Considerable evidence was taken by the respondents the F. O. Matthiessen & Wiechers Sugar Refining Company, after the other evidence

was closed, to show that there was a thick fog at the place of collision at the time it occurred, and that this fact materially affected the duties of the parties by enhancing the care and caution required of them in speed, and in making and distinguishing the signals made by the steamer whistles; a degree of care and caution which the colliding parties on both sides failed to exercise. But all the witnesses who were present and witnessed the disaster agree that, while the weather was somewhat thick and hazy, there was not sufficient fog to prevent a clear view of vessels and objects a mile or two away, and that the Holberg was distinctly seen and noted from the tug and bark when she was half a mile off. Drifts of fog were coming in from the sea about that time, and some vessels were enveloped in fog banks occasionally, which made it necessary for them to slow up and make fog signals. But at the place where the collision occurred, and when it occurred, there was no material obstruction to the view. This is testified to not only by the master and mate of the tug, but by the dozen witnesses who were on the bark, and were produced by the owner, the respondent Stafford.

I am of opinion that the tug Leonard Richards was not in fault, and that a decree to that effect should be made in favor of her and her owners against the respondents, discharging them from all liability for loss occasioned by the collision in question.